**Molly BLALOCK, Plaintiff,**

v.

**DALE COUNTY BOARD OF EDUCATION, et al., Defendants.**

**No. CIV. A. 97–D–650–S.**

United States District Court, M.D. Alabama, Southern Division.

Dec. 15, 1999.

Ann C. Robertson, Maury S. Weiner, Birmingham, Amy M. Shumate, Mike Gamble, Dothan, for Plaintiff.

Jack Corbitt, Ozark, Jere C. Segrest, Kevil Walding, Dothan, for Defendant.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is Defendants Dale County Board of Education ("Board") and Chuck Monday's ("Monday") (collectively "Defendants") Motion For Summary Judgment, together with a Brief In Support Of Motion For Summary Judgment ("Br."), filed August 16, 1999. Also on August 16, 1999, Defendants filed an Evidentiary Submission ("Def.s' Evid. Sub.") in support of their Motion For Summary Judgment. On August 30, 1999, Plaintiff Molly Blalock ("Plaintiff") filed a Brief In Opposition To Motion For Summary Judgment Of Defendants, which the court construes as a Response ("Resp."), together with an Evidentiary Submission ("Pl.'s Evid.

Sub."). Defendants filed a Reply Brief In Support Of Motion For Summary Judgment ("Reply"), on September 8, 1999. After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that Defendants' Motion For Summary Judgment is due to be granted in part and denied in part.

## JURISDICTION AND VENUE

The court properly exercises subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 20 U.S.C. §§ 1681 *et seq.* (Title IX of the Education Amendments of 1972, as amended), 42 U.S.C. §§ 2000e *et seq.* (Title VII of the Civil Rights Act of 1964, as amended), and 42 U.S.C. § 1983 (The Civil Rights Act of 1871, as amended). The Parties do not contest personal jurisdiction or venue.

## SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court construes the evidence and factual inferences in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing Fed.R.Civ.P. 56(c)).

The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548 (citing Fed. R.Civ.P. 56(c)). The mechanics of satisfying the initial burden vary depending upon which party, the movant or the nonmovant, bears the burden of proof at trial. *See Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115 (11th Cir.1993) (detailing the nature of the parties' responsibilities when preparing or defending against a motion for summary judgment).

Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his or] her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. In meeting this burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec.*

*Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(e); *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348; *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.

## PROCEDURAL HISTORY AND FACTUAL BACKGROUND

Plaintiff is a tenured teacher and an athletic coach in the Dale County, Alabama, school system. She has taught at Dale County High School since approximately 1974. (Pl.'s Dep. I at 11–12.)[1] During her tenure, she taught physical education and, at least after 1978, coached various female athletic sports, including volleyball, softball and basketball. (Resp. at 1; Br. at 1, 8–9.)

At all times pertinent to this action, the Board was Plaintiff's employer. Beginning in February 1993, Monday was the head football coach and athletic director for Dale County High School. Monday's job responsibilities included budgeting funds allocated for athletics at Dale County High School, evaluating the coaches and recommending job assignments for coaches. (Williams Dep. at 114.) Monday was not a member of the Board. (Resp. at 2; Pl.'s Dep. I at 38–39; Monday Aff. at 1; William Dep. at 28.)

Plaintiff alleges that she was treated less favorably than the male coaches. Primarily, she asserts the following: (1) that she was paid less than the male coaches (Pl.'s Dep. I at 33, 45, 62); (2) that unlike her male coach counterparts, Plaintiff did not have an assistant coach every year (Pl.'s Dep. I at 45, 64–65; Pl. Dep. II at 37–42; William Dep. at 33)[2]; (3) that the Board had one Athletic Director, who was Coach Monday, and denied Plaintiff's request in 1993 to create a separate position for Plaintiff as Women's Athletic Director[3] (Def.s' Ex. 8 to Pl.'s Dep. I; Pl.'s Dep. I at 46, 66–68); (4) that Monday denied Plaintiff and her female athletic teams use of athletic facilities, such as the baseball field and weight room (Pl.'s Dep. I at 33, 47, 53–54, 105–107; Pl.'s Dep. II at 15–16)[4]; (5) that Plaintiff and her teams were treated as inferior to the male teams with respect to sports equipment, locker rooms, restroom facilities, uniforms,[5] food allowances, and hotel accommodations at away games (Pl.'s Dep. I at 47, 66, 93–94, 110–114, 117–118, 137; Jackson Dep. at 69–70, 74); (6) that unlike the male coaches, Plaintiff had additional job responsibilities, which included washing the team uniforms and driving the school bus to transport her teams to and from athletic events (Pl.'s Dep. I at 46, 49–50, 52–53, 57, 123–124, 130–132; Pl.'s Dep. II at 35–36); (7) that in either 1993 or 1994 Monday required Plaintiff to attend all school athletic club meetings, which caused Plaintiff to quit a part-time job; unlike Plaintiff, however, Monday did not require all of the male coaches to attend the athletic club meet-

---

1. Plaintiff's deposition is contained in two volumes. The court will refer to volume I as "Pl.'s Dep. I" and volume II as "Pl.'s Dep. II."

2. In either 1994 or 1995, Plaintiff asked for an assistant coach but the Board said that if it "hired [Plaintiff] an assistant, [it] would have to get other women coaches in the system an assistant." (*Id.*)

3. Plaintiff requested this "title, in hopes of maybe increasing [her] salary." (Pl.'s Dep. I at 66.) According to Plaintiff, the position for

Athletic Director was only available to the head football coach. (*Id.* at 68.)

4. For instance, in approximately June 1996, Monday told Plaintiff that her teams could not use the weight room because the football teams used the weight room "all five days." (*Id.*)

5. For instance, Monday told Plaintiff to be "frugal" when buying new female volleyball uniforms, while the male basketball uniforms were more expensive and "top of the line." (Pl.'s Dep. I at 54–55; Pl.'s Dep. II at 28–30.)

ings (Pl.'s Dep. I at 52; Pl.'s Dep. II at 4–5, 9–10); and (8) that Plaintiff did not have the same benefits as male coaches with respect to money allowances for coaches' uniforms and out-of-town hotel accommodations at coaches' training clinics. (Pl.'s Dep. I at 48–49, 58–59.)

Plaintiff also asserts that, as a result of being treated as an inferior female coach, she was burdened with extra work. That is, Plaintiff did not have an assistant coach to help her prepare for out-of-town games; thus, Plaintiff had to handle all the administrative details, such as securing transportation, making reservations, and filling out purchase orders and paperwork concerning funds. (Pl.'s Dep. II at 23–25.) Eventually, in April 1994, when Plaintiff was coaching three sports—volleyball, softball and basketball—she requested to be relieved of coaching basketball. Monday, however, told her that she may have to be transferred to another school if she resigned from coaching basketball. Because she "was afraid" she would be transferred, Plaintiff did not resign and coached basketball during the 1994–95 academic year. (Br. at 26–27; Pl.'s Dep. I at 71–79, 81, 87–89.) [6]

Plaintiff says she consistently complained to her superiors about the alleged unfair treatment between her and the female teams she coached and the male coaches and their teams. (Pl.'s Dep. I at 93.) Namely, she complained to "every coach and principal" through the years, as well as to the Board members. (Id. at 110–111.) As evidence of her consistent complaints, Plaintiff asserts that in 1994 she asked Monday if she could purchase the same type of bases for the softball field that were used on the baseball field. Monday responded that "he was sick and tired of [Plaintiff] comparing everything that ... the boys had to what the girls had." (Resp. at 6; Pl.'s Dep. I at 56–57; Pl.'s Dep. II at 31–34.) Additionally, in either 1995 or 1996, a parent told Plaintiff that

Monday had commented that "girls had no business" competing at a state tournament. (Pl.'s Dep. II at 50–52.)

Plaintiff further asserts that as a result of her complaints, Monday harbored animosity toward her. For instance, Plaintiff says Monday once falsely "accused [her] of breaking equipment" and would "overlook" her when he introduced the coaching staff at banquets. (Pl.'s Dep. I at 50, 102–104, 133; Pl.'s Dep. II at 43–44.)

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in December 1995. Plaintiff's EEOC charge, which was prepared by an attorney, states that she was subjected to

[d]isparate treatment as compared with similar male coaching positions of equivalent male sports. [Plaintiff] has been the coach for many years of the girl's basketball, softball, and volleyball teams. The school board refused to provide any assistance coaching these teams. [Plaintiff] was not paid an equivalent rate for equivalent work. For example, [Plaintiff] was head coach of the girls' basketball team for many years and led them to play in several Regional and State Championship final rounds. During this time, she was denied the help of an assistant coach. [Plaintiff] was discriminated against, as were the female students, by being forced to do the work of two coaches. The male basketball program is staffed with two coaches. [Plaintiff's] replacement is a male and has been provided with an assistant coach.

(Def.s' Ex. 2 to Pl.'s Dep. I; see also Pl.'s Dep. I at 31–32.) A Notice Of Charge Of Discrimination regarding Plaintiff's EEOC complaint, dated December 1995, was forwarded to the Board. (Def.s' Ex. 2 to Pl.'s Dep. I.)

6. The court notes that, in April 1995, Plaintiff did resign from coaching basketball after receiving assurances from Monday and Ronnie Jackson, who at the time was the principal of Dale County High, that she would not be transferred. (Pl.'s Dep. I at 76–78; Jackson Dep. at 7.)

Subsequently, on June 18, 1996, the Board voted to involuntarily transfer Plaintiff to a vacancy at one of the elementary schools within the Dale County school system, where Plaintiff would not have any coaching duties. (Resp. at 8; Pl.'s Evid. Sub., Ex. 7.) Monday recommended the transfer to Jackson, stating that Plaintiff's transfer would be "[b]etter[ ]" for "Dale County High School Athletics." (Pl.'s Dep. I at 53; Pl.'s Dep. II at 14–15; Jackson Dep. at 7, 82–84.) The Board, however, rescinded its vote on June 25, 1996 at an "Emergency Board Meeting."[7] (Br. at 11; Pl.'s Evid. Sub., Ex. 9.)

After receiving a Notice Of Right To Sue from the EEOC, Plaintiff filed a timely Complaint in federal court on April 25, 1997 against the Board and Monday. (Resp. at 1; Def.'s Br. at 1; Compl. at 1; Am. Compl. at 1.) Plaintiff amended her Complaint on August 15, 1997, and now seeks relief under the following federal statutes: (1) Title IX of the Education Amendments of 1972, as amended, 20 U.S.C. §§ 1681 *et seq.* ("Title IX") (Count 1); (2) Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII") (Count 2); (3) The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution for which a remedy is provided under 42 U.S.C. § 1983 (Count 3); and (4) the Equal Pay Act, 29 U.S.C. §§ 206, 216 (Count 4). (Am.Compl.¶¶ 7–24.) Plaintiff seeks a declaratory judgment, injunctive relief, back pay, compensatory and punitive damages, as well as costs and attorney's fees. (*Id.* ¶¶ 12, 16, 21, 24, Prayer For Relief, ¶¶ 1–3.)

In response to Plaintiff's Amended Complaint, Defendants filed separate Motions To Dismiss on September 8, 1997. In a Memorandum Opinion And Order ("Order"), entered October 6, 1998, the court dismissed Plaintiff's Title VII and Title IX claims against Monday in his individual and official capacities.[8] (Order at 7–9, 11–12). Thus, in sum, all four counts remain against the Board, but only Counts 3 and 4 remain against Monday. Defendants have filed a Motion For Summary Judgment, which the court will now address.

## DISCUSSION

### I. Title IX (Count 1)

The Board argues that Title VII provides Plaintiff "with the proper mechanism and sufficient remedies" for the alleged violations she asserts under Title IX. (Br. at 20.) Because her claim under Title IX is identical to her claim under Title VII, the Board further asserts that Plaintiff's Title IX claim is "duplicitous and unnecessary." (*Id.* at 20.) Accordingly, the Board urges the court to grant summary judgment in its favor on Plaintiff's claim brought under Title IX.[9]

In support of its argument, the Board cites *Lakoski v. James,* 66 F.3d 751 (5th Cir.1995). In *Lakoski,* a female professor who was denied tenure sued her employer for sex discrimination, alleging claims under Title IX and 42 U.S.C. § 1983. *Id.* at 752. The Fifth Circuit held that Title VII preempted her causes of action under both Title IX and § 1983:

> Critical to our resolution of this case is the fact that, although [the plaintiff]

---

7. The minutes from the "Emergency Board Meeting" state that "[t]he superintendent recommended that [Plaintiff] remain as a physical education teacher at Dale County High for the 1996–97 school year and that she retain the coaching duties as girls' volleyball and girls' softball head coach." (Pl.'s Evid. Sub., Ex. 9.)

8. The court's Memorandum Opinion And Order is published as *Blalock v. Dale County Bd. of Educ.,* 33 F.Supp.2d 995 (M.D.Ala.1998).

9. Title IX provides in pertinent part that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

possessed a colorable claim of employment discrimination in violation of Title VII, she chose not to pursue the remedy made available by Title VII. Title VII provides an administrative procedure in which an aggrieved individual must first pursue administrative remedies before seeking judicial relief. *See* 42 U.S.C. § 2000e–5. [The plaintiff] chose to circumvent this procedure and immediately assert her rights under Title IX both directly and derivatively through 42 U.S.C. § 1983.

We are not persuaded that Congress intended that Title IX offer a bypass of the remedial process of Title VII. We hold that Title VII provides the exclusive remedy for individuals alleging employment discrimination on the basis of sex in federally funded educational institutions. We limit our holding to individuals seeking money damages under Title IX directly or derivatively through § 1983 for employment practices for which Title VII provides a remedy, expressing no opinion whether Title VII excludes suits seeking only declaratory or injunctive relief.

*Id.* at 753.

The Eleventh Circuit has not addressed whether Title VII provides the exclusive remedy for employment discrimination in federally funded educational institutions. The Seventh Circuit and a district court in this circuit, however, have agreed with the reasoning in *Lakoski. See Waid v. Merrill Area Public Schools,* 91 F.3d 857 (7th Cir.1996); *Gibson v. Hickman,* 2 F.Supp.2d 1481 (M.D.Ga.1998).

In *Gibson,* the defendants moved to dismiss the plaintiff's Title IX claim, arguing that Title VII provided the exclusive remedy. After examining *Lakoski, Waid* and district court decisions decided after *Lakoski,* the *Gibson* court stated:

This court agrees with those courts finding that Title VII preempts employment discrimination claims for money damages brought under Title IX. To hold otherwise would eviscerate Title VII's technical and administrative require-ments, thereby giving plaintiffs who work at federally funded educational institutions unfettered ability to bring what are in reality Title VII sexual discrimination claims without adhering to the same rules required of every other employment discrimination plaintiff in the country.

2 F.Supp.2d at 1484.

██ Likewise, this court finds that the holding in *Lakoski* is well reasoned and applies its holding to the case at bar. Here, Plaintiff asserts that she was discriminated against in her employment because she is female, and seeks monetary as well as injunctive relief under Title IX. (Am. Compl. ¶ 12, Prayer For Relief ¶¶ 1–3.) Plaintiff brings her Title IX claim under the following four theories of liability: (1) disparate pay; (2) hostile work environment; (3) disparate treatment; and (4) retaliation. (Am.Compl.¶¶ 7–12.)

First, the court finds that the reasoning in *Lakoski* precludes Plaintiff's Title IX action for money damages under her theories alleging disparate pay, hostile work environment and disparate treatment. Plaintiff, as an employee of the Board, asserts these three theories solely to seek redress for gender-based discrimination in the workplace. Specifically, in her Title IX claim (Count 1), Plaintiff alleges that she "has been discriminated against in employment based on ... sex" and that Defendants "have made employment decisions in a discriminatory manner and have limited and classified [ ][P]laintiff in a way that has adversely affected the employment opportunities and/or status because of her sex." (Am.Compl.¶ 8.) The court finds that Plaintiff's exclusive remedy for money damages for her employment-related discrimination claims lies under Title VII.

Second, the court finds that Plaintiff is likewise precluded from bringing her Title IX action for injunctive relief under her theories alleging disparate pay, hostile work environment and disparate treatment. (Am. Compl. ¶ 12; Prayer For Re-

lief, ¶¶ 1–3.) *Lakoski* expressly left open the question of whether a plaintiff may maintain a Title IX action for injunctive relief. 66 F.3d at 753. Plaintiff's demand for injunctive relief, however, is not a request to terminate federal funding under Title IX, *see id.* at 757, but rather is a request to enjoin the Board from further discriminating against Plaintiff on the basis of her gender. (Am. Compl. ¶ 12; Prayer For Relief, ¶¶ 1–3.) Because this type of equitable relief is available under Title VII, the court finds that *Lakoski*'s reasoning also applies to Plaintiff's request for injunctive relief on the aforementioned three theories of liability.

Third, however, the court finds that Plaintiff's Title IX claim seeking redress for retaliation requires a slightly different analysis. Subsequent to *Lakoski*, the Fifth Circuit decided *Lowrey v. Texas A & M Univ. System*, 117 F.3d 242 (5th Cir. 1997). In *Lowrey*, the plaintiff worked as a female basketball coach and brought a Title IX retaliation claim against her employer. *Id.* at 244. The plaintiff asserted in part that she was denied a promotion in retaliation for her involvement in a Title IX investigation of her employer's alleged "misallocation of resources among male and female athletes." *Id.* at 244, 247.

The plaintiff argued that her retaliation claim arose "exclusively under the provisions of [T]itle IX, not [T]itle VII, and thus [was] not preempted by [T]itle VII under the specific holding of *Lakoski*." *Id.* at 247. The Fifth Circuit agreed and held that the plaintiff "was fully entitled to raise complaints and to participate in the investigations concerning alleged violations of [T]itle IX and likewise was entitled to the protection against retaliation" under Title IX. *Id.* at 251.

The Fifth Circuit distinguished between a retaliation claim for opposing employment discrimination practices and a retaliation claim for opposing practices under Title IX:

> The preemption rule of *Lakoski* is predicated on the assumption that [T]itle VII affords a private right of action for

claims of employment discrimination on the basis of sex in federally funded educational institutions, rendering a private right of action under [T]itle IX duplicative.

In contrast, the anti-retaliation provisions of titles VII and IX are not identical, and [T]itle VII provides no remedy for retaliation against individuals who raise charges of noncompliance with the substantive provisions of [T]itle IX. Title VII prohibits retaliation only against individuals who oppose discriminatory employment practices or participate in complaints or investigations of employment practices prohibited by [T]itle VII.

·　·　·　·　·

The *Lakoski* court narrowly tailored its holding to individuals seeking money damages under [T]itle IX "for employment practices for which Title VII provides a remedy." Title VII provides no remedy, however, to employees of federally funded educational institutions who have suffered retaliation as a consequence of their opposition to noncompliance with [T]itle IX. Consequently, [the plaintiff] asserts a cause of action for retaliation that arises exclusively under [T]itle IX, without a corollary right under [T]itle VII.

Under such circumstances, [T]itle VII does not preempt [T]itle IX.

*Id.* at 248–249 (citations omitted).

Here, Plaintiff's retaliation theory is two-fold. Plaintiff asserts that the Board voted to transfer her in retaliation of her filing an employment discrimination charge with the EEOC *and/or* in retaliation of her complaints to Monday and the Board about alleged unequal treatment between the male and female athletic teams. (Pl.'s Dep. I at 93–94, 96–97.) Hence, Plaintiff asserts a retaliation claim based on her opposition to alleged illegal practices under both Title VII and Title IX.

For the same reason discussed above, the court finds that Plaintiff's retaliation claim seeking monetary and equita-

ble relief based upon her filing an EEOC charge remains barred under *Lakoski* and *Lowrey.* The court reaches this conclusion because this claim is brought under the anti-retaliation provision of Title VII.[10] Thus, Title VII is Plaintiff's exclusive remedy. However, Plaintiff's claim that she was retaliated against for complaining about alleged Title IX violations survives Title VII's preemption, because Plaintiff does not have a remedy under Title VII for this claim. *Lowrey,* 117 F.3d at 248–249.

■ The court now turns to the merits of Plaintiff's Title IX retaliation claim. The Parties submit that the court should apply the traditional three-part, burden-shifting framework used in Title VII cases. (Br. at 20; Resp. at 11.) The court agrees. *See Saville v. Houston County Healthcare Auth.,* 852 F.Supp. 1512, 1521 (M.D.Ala.1994) (applying the substantive standards of Title VII to the plaintiff's Title IX claims). In Section II. D. below, the court analyzes Plaintiff's Title IX retaliation claim alongside her Title VII retaliation claim. However, as discussed therein, Plaintiff cannot survive summary judgment because she has not shown that she suffered an adverse employment action, which is a crucial element of her prima facie case. Accordingly, the court finds that summary judgment is due to be granted in favor of the Board on Plaintiff's Title IX claim (Count 1).[11]

## II. Title VII (Count 2)

■ Title VII provides that an employer may not "discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e–2(a)(1). Under Title VII, a plaintiff must demonstrate through either direct or circumstantial evi-

dence that the Board's actions were the result of intentional discrimination. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 519, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Where, as here, a plaintiff seeks to prove intentional discrimination through circumstantial evidence of the employer's intent, the court applies the three-part, burden-shifting analysis articulated in *McDonnell Douglas Corp. v. Green* and *Texas Dep't of Community Affairs v. Burdine. See* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

Under the *McDonnell Douglas* and *Burdine* framework, a plaintiff must first raise an inference of discrimination by establishing a prima facie case. *Batey v. Stone,* 24 F.3d 1330, 1333 (11th Cir.1994). Once a plaintiff has established a prima facie case, the burden shifts and the defendant "must proffer a legitimate, non-discriminatory reason for the adverse employment action. The employer's burden is 'exceedingly light.'" *Meeks v. Computer Associates Intern.,* 15 F.3d 1013, 1021 (11th Cir.1994) (quoting *Tipton v. Canadian Imperial Bank of Commerce,* 872 F.2d 1491, 1495 (11th Cir.1989)).

A plaintiff must then establish that the employer's proffered reasons are pretextual. "Disbelief of the defendant's proffered reasons, together with the prima facie case, is sufficient evidence to demonstrate the existence of a genuine issue of fact as to the truth of each of the employer's proffered reasons for its challenged actions." *Combs v. Plantation Patterns,* 106 F.3d 1519, 1529 (11th Cir.1997). To survive summary judgment at this point, a plaintiff must come forward with evidence sufficient "to permit a reasonable fact finder to conclude that the employer's proffered non-discriminatory reasons were not

---

**10.** Title VII's anti-retaliation provision provides that "[i]t shall be an unlawful practice for an employer to discriminate against any of his [or her] employees because he [or she] has made a charge ... under this subsection." 42 U.S.C. § 2000e–3(a) (brackets supplied).

**11.** The Board also asserts that Plaintiff lacks standing to bring allegations under Title IX that "arguably apply to the girls' athletic teams, and not to [Plaintiff] personally." (Def.'s Br. at 16, 18–20.) Because Plaintiff's Title IX claim fails on other grounds, the court need not address this argument.

what actually motivated its conduct." *Id.* at 1528.

As discussed in Section I above, Plaintiff asserts the same four theories of liability under Title VII as she does under Title IX. That is, she sets forth a Title VII claim alleging four theories of liability: (1) disparate pay; (2) hostile work environment; (3) disparate treatment; and (4) retaliation. (Am.Compl.¶¶ 13–17.)

### A. Disparate Pay

In her Amended Complaint, Plaintiff asserts that "[d]uring her tenure at Dale County High School, [she] was not paid as much as the male coaches for equivalent work." (Am.Compl.¶¶ 9–10.) Specifically, she asserts that "for years" she was paid based on a nine-month contract as compared to the male coaches who were paid based on a ten-month contract. (Resp. at 1; Pl.'s Dep. I at 62–63; Pl.'s Dep. II at 63–64.) Plaintiff complains that she "had to hire a lawyer and discuss legal action before she received the same contract and pay as the male coaches." (*Id.*)

The Board argues that the court need not reach the merits of Plaintiff's Title VII disparate pay claim. That is, the Board argues that Plaintiff is barred from bringing this claim because she signed a Confidential Full And Final Release Of All Claims ("Release") relating to her salary dispute. (Br. at 28–29.) Plaintiff has conceded and the court so found in its Order entered October 6, 1998, that this claim was barred by her Release.[12] That is, on March 14, 1994, the Board placed Plaintiff on a 10–month salary contract and paid Plaintiff approximately $7,000. In return, Plaintiff signed a Release waiving any legal claim based on her disparity in pay. (Order at 2, 6.) Accordingly, the court finds that summary judgment is due to be granted in favor of the Board on Plaintiff's Title VII disparate pay claim based on her salary dispute that was the subject of the Release.

However, the court previously found that the Release does not bar any claim arising out of an alleged disparity in pay arising after the date of the Release. (*Id.* at 6–7.) Nonetheless, in opposing summary judgment, Plaintiff has not argued or set forth any additional facts to support a disparate pay theory. (Pl.'s Resp. at 18–23); *see generally Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1528 (11th Cir.1992) (holding that to establish a prima facie case based on sex-based disparate pay under Title VII, Plaintiff must show that "she is female and that the job she occupied was similar to higher paying jobs occupied by males"). (Resp. at 18–23.) In other words, Plaintiff has rested on her pleadings and apparently expects the court to formulate an argument that will allow this claim to survive summary judgment. However, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.1995). Therefore, based on the foregoing, the court finds that Plaintiff has abandoned her Title VII disparate pay claim; thus, summary judgment is due to be granted on this claim.

### B. Hostile Work Environment

In her Amended Complaint, Plaintiff further asserts that she "has been subjected to a sexually hostile work environment ... that has altered the terms and conditions of her employment." (Am. Compl.¶ 14.) The court finds that Plaintiff's claim for a hostile work environment exceeds the scope of her EEOC charge and, thus, is barred.

A plaintiff may commence a lawsuit on all issues sufficiently "like or related" to those specified in the EEOC charge. *IMPACT v. Firestone*, 893 F.2d 1189, 1196 (11th Cir.1990). Additionally, "[w]eight and credibility should be given to the con-

---

12. The court is referring to the same Order discussed at page 1297, *supra.*

struction or meaning the EEOC gives to charges filed with them." *Tillman v. City of Boaz,* 548 F.2d 592, 593 (5th Cir.1977)[13] (citations omitted). The Eleventh Circuit has stated:

> As long as allegations in the judicial complaint and proof are "reasonably related" to charges in the administrative filing and "no material differences" between them exist, the court will entertain them. As we have noted ..., "the 'scope' of the judicial complaint is limited to the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."
>
> Judicial claims which serve to amplify, clarify, or more clearly focus earlier EEO complaints are appropriate. Allegations of new acts of discrimination, offered as the essential basis for the requested judicial review are not appropriate.

*Wu v. Thomas,* 863 F.2d 1543, 1547 (11th Cir.1989) (citations omitted).

Furthermore, when the party filing an EEOC charge is unaided by counsel, the contentions contained therein "must be liberally construed because they are made by persons who are unfamiliar with the technicalities of formal pleadings." *Tillman,* 548 F.2d at 593 (citations omitted). However, "liberal construction is not necessary where the claimant is aided by counsel in preparing his [or her] charge." *Ang v. Procter & Gamble Co.,* 932 F.2d 540, 546 (6th Cir.1991).

As stated by the Eleventh Circuit, "[t]he starting point for determining the permissible scope of the judicial complaint is the EEOC charge and investigation." *Eastland v. Tennessee Valley Authority,* 714 F.2d 1066, 1067–68 (11th Cir.1983); *see also Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 462 (5th Cir.1970) ("The crucial element of a charge of discrimination is the factual statement contained therein."). Turning to the factual state-

ment contained in Plaintiff's EEOC charge, the court initially makes two observations. First, the court notes that the policy favoring liberal construction of EEOC charges is not entitled to much weight here, if any. That is, Plaintiff was aided by counsel, as her EEOC charge is dated and signed by her attorney. (Def.s' Ex. 2 to Pl.'s Dep. I.) Second, the Parties have not submitted any evidence as to how, if at all, the EEOC interpreted Plaintiff's charge. Thus, in determining the scope of the charge, the court is confined to the four corners of the charge without the aid of the EEOC's construction.

■ Plaintiff's EEOC charge does not contain an allegation regarding a hostile work environment. Rather, the EEOC charge is limited to claims regarding gender-based disparate pay and disparate treatment. Specifically, in her EEOC charge, Plaintiff categorizes her claims as follows: (1) an unequal pay claim and (2) a claim based on the Board's "refus[al] to provide" Plaintiff "any assistance coaching." (*Id.*) Plaintiff's EEOC charge does not allude to or even generally reference a hostile work environment theory. Additionally, while Plaintiff's hostile work environment theory stems from alleged gender discrimination, it is unlike her theories based upon disparate pay and disparate treatment. That is, a claim alleging hostile work environment is a separate and distinct theory of liability with different elements of proof. Therefore, the court finds that Plaintiff's hostile work environment theory is not reasonably related to her disparate pay and disparate treatment theories. Moreover, the court finds that it is not reasonably likely that the EEOC's investigation would have included an analysis of this non-asserted theory. *See Wu,* 863 F.2d at 1547; *see also Swanson v. Civil Air Patrol,* 37 F.Supp.2d 1312 (M.D.Ala.1998) (finding that the plaintiff was barred from bringing a sex-based dis-

---

**13.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued prior to October 1, 1981.

parate treatment claim where the EEOC charge was limited to claims alleging a hostile work environment and retaliation). Accordingly, the court finds that, because Plaintiff failed to exhaust her administrative remedies, she may not pursue her hostile work environment claim under Title VII.

Even if Plaintiff's hostile work environment claim was not barred by her failure to exhaust administrative remedies, the court nonetheless finds that Plaintiff cannot prevail on the merits. The Supreme Court has held that "sexual harassment so 'severe or pervasive' as to 'alter the conditions of [the victim's] employment and create an abusive working environment' violates Title VII." *Faragher v. City of Boca Raton,* 524 U.S. 775, 785, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662 (1998) (citing *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)). To demonstrate a hostile work environment, the hostility can be gender based as opposed to purely sexual in nature. *Bell v. Crackin Good Bakers, Inc.,* 777 F.2d 1497, 1503 (11th Cir.1985). In *Bell,* the Eleventh Circuit held that sexual harassment includes "threatening, bellicose, demeaning, hostile or offensive conduct in the workplace because of the sex of the victim of such conduct...." *Id.* at 1503; *see also Sims v. Montgomery County Comm'n,* 766 F.Supp. 1052, 1073 (M.D.Ala.1990) (Thompson, J.).

■ To establish a prima facie case of a hostile work environment, Plaintiff must show: (1) that she is a member of a protected class; (2) that unwelcome harassment occurred, (3) that the harassment was based on Plaintiff's gender; (4) "that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment"; and (5) that the employer knew or should have known of the harassment and failed to take remedial action. *Mendoza v. Borden, Inc.,* 195 F.3d 1238, 1244 (11th Cir.1999); *Huddleston v. Roger Dean Chevrolet, Inc.,*

845 F.2d 900, 903–04 (11th Cir.1988); *Sparks v. Pilot Freight Carriers, Inc.,* 830 F.2d 1554, 1557 (11th Cir.1987).

For the reasons that follow, the court finds that Plaintiff cannot satisfy the fourth element of her prima facie case.[14] In *Mendoza,* the Eleventh Circuit examined the threshold a plaintiff must meet under this prima facie prong. While acknowledging that "employment discrimination, including sexual-harassment claims present fact-intensive issues[,]" the Eleventh Circuit "agree[d] with the Fifth Circuit's observation that motions for summary judgment ... are appropriate 'to police the baseline for hostile environment claims.'" *Mendoza,* 195 F.3d at 1244 (quoting *Indest v. Freeman Decorating, Inc.,* 164 F.3d 258, 264 n. 8 (5th Cir.1999)).

The Eleventh Circuit examined and cited twelve cases where courts have held as a matter of law that a plaintiff's allegations were not sufficiently severe or pervasive to support a hostile work environment claim. *Mendoza,* 195 F.3d at 1246. The Eleventh Circuit explained the standard under the fourth element as follows:

> Establishing that harassing conduct was sufficiently severe or pervasive to alter an employee's terms or conditions of employment includes a subjective and an objective component. *Harris,* 510 U.S. at 21–22, 114 S.Ct. 367.... The employee must "subjectively perceive" the harassment as sufficiently severe and pervasive to alter the terms or conditions of employment, and this subjective perception must be objectively reasonable. *Id.* The environment must be one that "a reasonable person would find hostile or abusive" and that "the victim ... subjectively perceive[s] ... to be abusive." *Id.* at 21, 114 S.Ct. 367.... Furthermore, "the objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 118

---

**14.** The court, thus, need not address the other four elements of the prima facie case.

S.Ct. 998, 140 L.Ed.2d 201 ... (1998) (quoting *Harris,* 510 U.S. at 23, 114 S.Ct. 367).

The objective component of this analysis is somewhat fact intensive. Nevertheless, the Supreme Court and this Court have identified the following four factors that should be considered in determining whether harassment objectively altered an employee's terms or conditions of employment: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance. *Allen v. Tyson Foods,* 121 F.3d 642, 647 (11th Cir.1997) (citing *Harris,* 510 U.S. at 23, 114 S.Ct. 367). The courts should examine the conduct in context, not as isolated acts, and determine under the totality of the circumstances whether the harassing conduct is sufficiently severe or pervasive to alter the terms or conditions of the plaintiff's employment and create a hostile or abusive working environment. *Id.; see Harris,* 510 U.S. at 23, 114 S.Ct. 367; *Henson,* 682 F.2d at 904; *Faragher v. City of Boca Raton,* 118 S.Ct. at 2283 (citing *Harris,* 510 U.S. at 23, 114 S.Ct. 367, and explaining that "[w]e directed courts to determine whether an environment is sufficiently hostile or abusive by 'looking at all the circumstances' ").
*Mendoza,* 195 F.3d at 1245.

■ In viewing the totality of the evidence in the light most favorable to Plaintiff, the court finds that the conduct alleged by Plaintiff does not rise to the level of severity required to maintain a hostile work environment claim. Plaintiff has voiced complaints during her 20 "plus" years as a coach at Dale County High School about the alleged inequalities in the way in which she has been treated as compared to male coaches. She has cited several incidents of alleged disparate treatment occurring most recently in 1993, as set forth in pages 1295–97, *supra.* These incidents include Plaintiff's allega-

tions that the Board and Monday treated her as inferior to the male coaches in various employment decisions pertaining to job responsibilities, assistance in coaching her teams and benefits. As discussed *infra* in Section II.C., the court finds that some of these allegations give rise to a triable issue as to Plaintiff's claim that she has been treated differently than the male coaches in the terms and conditions of her employment.

Plaintiff, however, also seeks to use these same allegations to support her hostile work environment claim. In examining the merits of Plaintiff's hostile work environment claim, the court finds instructive *Cowan v. Prudential Ins. Co. Of America,* 141 F.3d 751 (7th Cir.1998). There, in rejecting Plaintiff's hostile work environment claim, the Seventh Circuit noted as follows:

> In support of her [hostile work environment] claim, [the plaintiff] points to other incidents where male employees allegedly were treated better than female employees. For instance, [the plaintiff] claims that her supervisor continued to work more intensively with a new employee than he did with her. If adequately supported, such disparate treatment could constitute a claim of outright discrimination-not a hostile work environment claim.

*Id.* at 759. Similarly, in *Parker v. State, Dept. of Public Safety,* 11 F.Supp.2d 467 (D.Del.1998), the court found that the plaintiff could not categorize as a hostile work environment claim her allegations that male co-employees were treated more favorably "with respect to troop and shift assignments and transfer opportunities." *Id.* at 475. Rather, the court found that "[t]hese latter forms of discrimination present basic disparate treatment scenarios, that is, the kind of tangible or economic losses that the *Vinson* Court contrasted with a hostile environment." *Id.* (citing *Vinson,* 477 U.S. at 57, 106 S.Ct. 2399). The court continued: "Such disparate treatment consists of employment policies

or employment decisions involving, for example, hiring, firing, benefits, promotions and compensation." *Id.* Based on the foregoing, the court finds that Plaintiff cannot support a hostile work environment claim with allegations that constitute classic examples of alleged disparate treatment.

Accordingly, the court finds that Plaintiff is left with her allegations that Monday "berated and humiliated" her based on her gender.. (Resp. at 16–17); *see Bell*, 777 F.2d at 1503 (holding that sexual harassment includes "threatening, bellicose, demeaning, hostile or offensive conduct in the workplace because of the sex of the victim of such conduct. . ."). For example, Plaintiff asserts that Monday once told her that "he was sick and tired of [Plaintiff] comparing everything that . . . the boys had to what the girls had." (Resp. at 6; Pl.'s Dep. I at 56–57; Pl.'s Dep. II at 31–34.) According to Plaintiff, Monday also harbored animosity toward her as evidenced by his false accusation that she tore up a lawnmower and his failure to introduce her along with the male coaches at athletic banquets. (Br. at 28; Pl.'s Dep. I at 50, 102–104, 133; Pl.'s Dep. II at 43–44.) While these instances, if true, are not condoned by the court, they do not rise to the level of severity or pervasiveness required to maintain a hostile work environment claim. *See Mendoza*, 195 F.3d at 1245 (citing numerous cases where allegations of a hostile work environment were legally insufficient as a matter of law). Additionally, the court notes without ruling that at least Plaintiff's latter two allegations should not automatically be construed as relating to Plaintiff's gender as they just as easily could be based on a personal dislike for Plaintiff and, thus, are not necessarily gender based. *See id.*, 195 F.3d at 1247 (stating that whether the plaintiff's complaints that her supervisor's statements "I'm getting fired up" and his "constant 'following and staring'" contained "the necessary sexual or other gender-related connotations to be actionable

sex discrimination is questionable.") Based on the foregoing, the court finds that summary judgment is due to be granted on Plaintiff's Title VII hostile work environment claim.[15]

## C. Disparate Treatment

In her Amended Complaint, Plaintiff generally asserts that she has been discriminated against in the "terms and conditions of her employment on the basis of her sex." (Am.Compl.¶ 14.) Before analyzing the merits of Plaintiff's Title VII disparate treatment claim, the court will address the Board's contention that the majority of Plaintiff's individual allegations supporting her alleged disparate treatment claim are time barred. Specifically, the Board asserts that most of Plaintiff's allegations occurred more than 180 days before Plaintiff filed her charge in December 1995 and are outside the scope of the charge. (Reply at 6; Answer To Am. Compl. ¶ 32.) Plaintiff, on the other hand, argues that the Board's alleged discriminatory acts constitute a continuing violation and, thus, are not time barred. (Resp. at 17, 21.)

Title VII permits an aggrieved employee to seek relief in federal court only where he or she has (1) filed timely charges with the EEOC and (2) received and acted upon the EEOC's statutory notice of right-to-sue. *See* 42 U.S.C. § 2000e–5(f)(1); *McDonnell Douglas*, 411 U.S. at 798, 93 S.Ct. 1817. Concerning the first requirement, which is the only one in dispute, a plaintiff is required to file a charge of discrimination with the EEOC within 180 days of the alleged discrimination. *See* 42 U.S.C. § 2000e–5(e). If a plaintiff fails to file before this time elapses, then his or her claim is untimely. In other words, a plaintiff is procedurally barred for failure to exhaust Title VII's administrative remedies if said plaintiff fails to file a charge of discrimination with the EEOC within 180 days of the alleged

---

**15.** In finding that Plaintiff's hostile work environment claim fails as a matter of law, the court assumes, without deciding, that Plaintiff properly exhausted her administrative remedies as to all allegations which she contends supports this theory of liability.

discrimination. *See Delaware State College v. Ricks,* 449 U.S. 250, 256, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980); *Everett v. Cobb County Sch. Dist.,* 138 F.3d 1407, 1410 (11th Cir.1998).

The Supreme Court has recognized that the filing of a timely charge is "a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). An exception to the 180–day filing requirement arises where the discriminatory act(s) constitutes a "continuing violation." *See e.g., Patterson v. Augat Wiring Sys., Inc.,* 944 F.Supp. 1509, 1517 (M.D.Ala.1996) (citing *Calloway v. Partners Nat'l Health Plans,* 986 F.2d 446, 449 (11th Cir.1993)). Under the continuing violation doctrine, "[w]here an employee charges an employer with continuously maintaining an illegal employment practice, he [or she] may file a valid charge of discrimination based upon that illegal practice until 180 days after the last occurrence of an instance of that practice." *Beavers v. American Cast Iron Pipe Co.,* 975 F.2d 792, 796 (11th Cir.1992). However, "[t]he timely discrimination alleged by the plaintiff cannot simply be a perpetuation of the effects of the past discriminatory acts." *Bush v. Liberty Nat'l Life Ins. Co.,* 12 F.Supp.2d 1251, 1257 (M.D.Ala. 1998), *aff'd,* 196 F.3d 1261, 1999 WL 782320, No. 98–6376 (11th Cir. Sept. 16, 1999) (citations omitted).

To determine whether alleged discriminatory acts constitute a continuing violation, the Fifth Circuit in *Berry v. Board of Supervisors of L.S.U.,* 715 F.2d 971 (5th Cir.1983), articulated a three-prong test, whereby the following nonexhaustive factors are to be examined:

The first is subject matter. Do the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation? The second is frequency. Are the alleged acts recurring ... or more in the nature of an isolated work assignment or employment decision? The third factor, perhaps of most importance, is degree of permanence. Does the act have the degree of permanence which should trigger an employee's awareness of and duty to assert his or her rights, or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate?

*Id.* at 981. The *Berry* court noted that "the particular context of individual employment situations requires a fact-specific inquiry by a trial judge which cannot be easily reduced to a formula." *Id.* at 981–982. This court finds the *Berry* rubric to be instructive in determining whether alleged discriminatory acts constitute a continuing violation.[16]

Plaintiff argues that, because she is female, she has been discriminated against in the terms and conditions of her employment. (Resp. at 22.) Plaintiff's disparate treatment claim involves allegations of alleged multiple discriminatory acts and non-actions directed against her as a female coach but not against male coaches. In response, the Board contends that the following allegations are untimely:

(1) The Board's refusal in January 1993 to create a position for Plaintiff as Women's Athletic Director. (Br. at 26; Pl.'s Dep. I at 66–69.)

(2) Plaintiff's assertion that in April 1994 when she requested that she be relieved of coaching basketball, Monday told her that she may have to be transferred if she did not coach. (Pl.'s Dep. I at 72–74.)

---

16. The Eleventh Circuit adopted the *Berry* test in Part C of its opinion in *Roberts v. Gadsden Mem'l Hosp.,* 835 F.2d 793, 800 (11th Cir. 1988) ("*Roberts I* "). However, as this court noted in *Malone v. K–Mart Corp.,* 51 F.Supp.2d 1287, 1301 n. 3 (M.D.Ala.1999), the Eleventh Circuit reconsidered *Roberts I*

*sua sponte* and withdrew Part C of *Roberts I* in its entirety. *Roberts v. Gadsden Mem'l Hosp.,* 850 F.2d 1549, 1551 (11th Cir.1988). The court, thus, refrains from stating that the Eleventh Circuit has adopted the *Berry* analysis.

(3) The Board's refusal to hire an assistant women's coach to aid Plaintiff. Plaintiff estimates that she requested an assistant in approximately 1994 or 1995. (*Id.* at 27.)

(4) Plaintiff's allegation that in 1994, 1995 and 1996 she, unlike her male counterparts, was not provided with a coach's uniform. (*Id.* at 27.)

(5) Plaintiff's allegation that during either the academic year of 1995–96 or 1996–97, she, unlike the male coaches, was not allowed to stay overnight on game road trips. (*Id.* at 27.)

(6) Plaintiff's allegation that, during either the academic year of 1993–94, 1994–95 or 1995–96, she, unlike the male coaches, had to drive the school bus to transport her teams to and from athletic events. (Pl.'s Dep. I at 49–50, 127–128, 130–132.)

 The court agrees with the Board that allegations (1) and (2) are time barred. Plaintiff's request that the Board create a position for a Women's Athletic Director, as well as her resignation request, undisputedly occurred more than 180 days prior to Plaintiff filing her EEOC charge in December 1995. In applying the three *Berry* factors, the court finds that Plaintiff has not demonstrated a continuing violation. First, Plaintiff couches both allegations as gender discrimination acts; thus, arguably "the acts involve the same type of discrimination." *Berry,* 715 F.2d at 981. Second and more importantly, however, the court finds that the acts are not sufficiently connected to her general allegations of disparate treatment asserted several years later in December 1995 but, rather, are "more in the nature of an isolated ... employment decision." *Id.* The court notes that the purpose of the administrative requirements under Title VII is to protect an employer from having to defend against claims arising out of remote decisions. *See Delaware State College v. Ricks,* 449 U.S. 250, 256–257, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) (stating that Title VII's "limitations periods, while guaranteeing the protection of the civil rights laws to those who promptly assert their rights, also protect employers from the burden of defending claims arising from employment decisions that are long past"). Third and most importantly, the court finds that these two events are concrete, identifiable actions which should have triggered Plaintiff's awareness of her possible causes of action. Plaintiff even admits that she believed at the time that the Board's refusal to create a separate position for a Women's Athletic Director was based on gender animus. (Pl.'s Dep. I at 68, 70.) Thus, the court finds that nothing prevented Plaintiff from protecting her rights at that time and that Plaintiff cannot use her December 1995 EEOC charge to bootstrap a career of alleged gender-based inequities.

 Regarding allegations (3), (4), (5) and (6), however, the court finds that these actions are not time barred. Because Plaintiff has alleged that it is possible that the alleged discriminatory acts described in (3)—(6) may have occurred during the 180–day time frame, the court finds that a triable issue remains for the jury. In so finding, the court recognizes that the dates of discrimination alleged by Plaintiff are vague and sometimes only narrowed to a year, not even a month. While Plaintiff's references to such ill-defined dates frustrate and diminish the court's ability to make a just ruling, the court must construe the facts in the light most favorable to Plaintiff. The court emphasizes, however, that Plaintiff must be more specific at trial regarding the time frame in which each alleged discriminatory act occurred. That is, Plaintiff must prove instances of disparate treatment within the limitations period in order to recover.

In the alternative, the Board argues that, even if Plaintiff's allegations are timely, all of them except the allegation that Plaintiff was not given an assistant coach are outside the scope of the EEOC charge because they are not "like or related" to the allegations contained therein. (Reply at 6–7.) In other words, the Board challenges allegations (4)—(6) above as unre-

lated to the allegations contained in Plaintiff's EEOC charge. The court disagrees.

As previously discussed, a plaintiff may commence a lawsuit on all issues sufficiently "like or related" to those specified in the EEOC charge. *Firestone*, 893 F.2d at 1196. In her EEOC charge, in addition to complaining about not having an assistant coach, Plaintiff states that the Board "refused to provide any assistance coaching [the female basketball, softball and volleyball] teams." (Def.s' Ex. 2 to Pl.'s Dep. I.) The Board interprets Plaintiff's lack-of-assistance claim to include only Plaintiff's allegation that she did not have an assistant coach as did the male head coaches. (Reply at 7.) The court finds the Board's interpretation to be too narrow.

The court construes Plaintiff's allegation as reaching all alleged discriminatory acts that arguably contributed to making Plaintiff's job as a coach more difficult than the job of the male coaches. Thus, the court finds that the alleged discriminatory acts related to coaches' uniforms, hotel accommodations and transportation, as described in (4)—(6), are associated with her complaint concerning a lack of "assistance" in coaching. (Def.s' Ex. 2 to Pl.'s Dep. I.) In short, the court finds that these allegations are within the scope of the EEOC charge.

The court now turns to the merits of Plaintiff's disparate treatment claim. To establish a prima facie case for disparate treatment, Plaintiff must prove: (1) that she was a member of a protected group, (2) that an adverse employment action took place, (3) that she and a similarly situated non-protected person received dissimilar treatment, and (4) that sufficient evidence exists to infer a nexus or causal connection between gender and the disparate treatment. *See Bell v. Eufaula City Bd. of Educ.*, 995 F.Supp. 1377, 1385 (M.D.Ala.1998).

The Board has not moved for summary judgment on the merits of Plaintiff's allegations contained in (3)—(6) above. (Br. at 26–27.) Thus, Plaintiff may proceed to trial on these disparate treatment allegations. The Board only attacks Plaintiff's

disparate treatment theory based on allegations that, unlike her male counterparts, Plaintiff was required to attend all athletic club meetings and was not allowed to use the new lawnmower to "drag" the softball field. (Br. at 28–29.)

Regarding the athletic club meetings, the Board does not dispute the first, second and fourth elements of the prima facie case; thus, the court finds for purposes of the Board's Motion that Plaintiff has satisfied these three elements. The Board only challenges that Plaintiff cannot "show that she was treated differently from persons not in the protected class." (Br. at 30.) Plaintiff asserts that Monday required Plaintiff to attend all school athletic club meetings; however, not all of the male coaches attended all of the meetings. (Pl.'s Dep. I at 52; Pl.'s Dep. II at 4–5, 9–10). The Board primarily asserts that Plaintiff has not presented any evidence that Monday did not require the male coaches to all attend. (Br. at 29–30.) The court disagrees. Plaintiff specifically asked Monday about "why [she] had been told to attend all of the meetings" when "it appeared that all of the male coaches were not necessarily all attending the meetings." (Pl.'s Dep. I at 9–10.) According to Plaintiff, Monday told her that "various things had come up along the way, where some of the coaches ... had other things that they had to do, to take care of." (*Id.*; Resp. at 5.) The court finds that based on Monday's remarks, Plaintiff has raised a factual issue as to whether Monday also had a mandatory attendance requirement for the male coaches or whether the attendance requirement was relaxed for the male coaches. Accordingly, the court finds that Plaintiff has demonstrated a prima facie case.

Thus, the burden now shifts to the Board. The Board has not come forth with any legitimate nondiscriminatory reason for Monday's action. In fact, the Board has devoted no discussion to its burden in any of its pleadings. Therefore, the court finds that the Board has failed to

meet its "'exceedingly light'" burden. *Meeks*, 15 F.3d at 1021 (quoting *Tipton*, 872 F.2d at 1495); *see generally Perdue v. City University of New York*, 13 F.Supp.2d 326, 335–336 (E.D.N.Y.) (finding that the evidence supported the jury's verdict under Title VII where testimony demonstrated that the female basketball coach was treated inferior to the male basketball coach; in contrast to the male basketball coach, the female basketball coach was required to launder team uniforms and clean the gym and had fewer assistant coaches and no team locker room.). Accordingly, summary judgment is due to be denied on Plaintiff's disparate treatment claim concerning her required attendance at athletic club meetings.

As for Plaintiff's claim concerning the lawnmower, the Board again challenges the third element of Plaintiff's prima facie case. Plaintiff has not addressed this claim in opposing summary judgment. In resting on her pleadings, the court finds that Plaintiff has not met her burden on summary judgment of demonstrating disputed issues of material fact. *See Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. Thus, the court finds that Plaintiff has abandoned this claim. *See Resolution Trust Corp.*, 43 F.3d at 599. Additionally, the court has carefully studied the record, including Plaintiff's deposition, and agrees with the Board that there is no evidence demonstrating whether or not only Plaintiff, and not male coaches, was restricted from using this particular lawnmower. Accordingly, the court finds that summary judgment is due to be granted as to this allegation raised under a disparate treatment theory.

### D. Retaliation

As discussed in Section I., Plaintiff asserts a retaliation claim under Title VII and Title IX. The Parties agree that to establish a prima facie case of retaliation under both Title VII and Title IX, Plaintiff must demonstrate that: (1) she engaged in "statutorily protected expression"; (2) that there was a "subsequent adverse employment action"; and (3) that "some causal relation" exists between the protected expression and the adverse action. *Meeks*, 15 F.3d at 1021. (*See* Resp. at 23; Br. at 24.)

■ Plaintiff asserts that she was retaliated against for filing a charge of sex discrimination with the EEOC and based upon her "constant complaints" to Defendants "about the inequitable conditions that she and her female athletes were subjected to compared to the male coaches and the male athletes." (Resp. at 23–24.) The Board argues that Plaintiff cannot meet the second prong of her prima facie case because she has not suffered an adverse employment action. (Br. at 31.) The court agrees for the reasons that follow and, thus, need not address the first and third prongs of the prima facie case.

The alleged adverse employment action of which Plaintiff complains occurred on June 18, 1996, when the Board voted to involuntarily transfer Plaintiff to another school, where she would not be able to coach. (Resp. at 7, 24.) The Board asserts that Plaintiff did not suffer an adverse employment action because the Board ultimately rescinded its vote to transfer Plaintiff on June 25, 1996. (Br. at 31–33.) Plaintiff, on the other hand, argues that the Board's initial vote to transfer her to a less desirable position was an adverse employment action, even though the Board's vote was ultimately rescinded and never culminated in a change in her employment status. (Resp. at 24.) In support of this argument, Plaintiff relies on *Wideman v. Wal–Mart Stores, Inc.*, 141 F.3d 1453 (11th Cir.1998).

In *Wideman*, the plaintiff brought a Title VII retaliation case against her employer. The district court granted summary judgment in favor of the employer. *Id.* at 1454. On appeal, the Eleventh Circuit addressed whether the plaintiff had demonstrated an "adverse employment action." The Eleventh Circuit noted that the following five "actions" occurred after the plaintiff had filed a discrimination charge with the EEOC.

First, ... the day after [the plaintiff] informed management that she had filed an EEOC charge, she was improperly listed as a no-show on a day she was scheduled to have off. [The plaintiff] discovered the error when she went into the Wal–Mart to shop. When she brought the error to the attention of her manager, Mark Telfer, he required her to work anyway without a lunch break. Second, ... [Telfer] gave [her] written reprimands. After the second reprimand, she received a one-day suspension. In her previous eleven months of employment at Wal–Mart she had not received any reprimands. Third, ... [Telfer] began soliciting employees at Wal–Mart for negative statements concerning [the plaintiff]. According to [the plaintiff], Telfer did not seek statements from employees who would have given positive comments about her. Fourth, ... [the plaintiff] reported to work and found she had not been scheduled to work. When she announced her intention to call Wal–Mart headquarters to find out why, [an] Assistant Manager [ ] threatened to shoot her in the head. Fifth, ... while she was working at Wal–Mart, [the plaintiff] suffered an allergic reaction which required medical treatment. Although [another] Assistant Manager [ ] was aware that [the plaintiff] needed treatment, she needlessly delayed authorizing that medical treatment.

*Id.* at 1455.

After examining the split in the circuits, the Eleventh Circuit "join[ed] the majority" and held that "Title VII's protection against retaliatory discrimination extends to adverse actions which fall short of ultimate employment decisions." *Id.* at 1456. The Eleventh Circuit reasoned that "permitting employers to discriminate against an employee who files a charge of discrimination so long as the retaliatory discrimination does not constitute an ultimate employment action, could stifle employees' willingness to file charges of discrimination." *Id.*

While the Eleventh Circuit noted that "some threshold level of substantiality" must be satisfied in order for alleged adverse acts to constitute an actionable retaliation claim, it did not decide where that threshold should be placed. *Id.* The Eleventh Circuit then held that "[i]t is enough to conclude ... that the actions about which [the plaintiff] complains considered collectively are sufficient to constitute prohibited discrimination." *Id.*

The issue then is whether a rescinded vote by the Board to transfer Plaintiff to a disadvantageous employment position meets the threshold. In resolving this issue, the court is guided by *Graham v. State Farm Mutual,* 193 F.3d 1274 (11th Cir.1999). In *Graham,* the plaintiff brought an action under the Family Medical Leave Act ("FMLA"), 28 U.S.C. § 2601 *et seq. Id.* at 1275. The plaintiff alleged under the FMLA that her employer "violated her rights ... by discriminating against her, harassing her, denying her FMLA protections, retaliating against her for taking leave protected under the FMLA, and constructively discharging her, among other things." *Id.* Using the analytical framework from Title VII cases, which courts apply in FMLA actions, the district court granted summary judgment in favor of the employer. The Eleventh Circuit affirmed and adopted the district court's opinion. *Id.* at 1275, 1283.

The district court found that the plaintiff could not establish a prima facie case because she had not shown an " 'adverse employment action.' " *Id.* at 1283. The plaintiff complained of the following three alleged adverse employment actions: (1) a memorandum placed in the plaintiff's personnel file concerning Plaintiff's "excessive non-FMLA protected absence record," *id.* at 1279, 1283; (2) her employer's determination that the plaintiff was "AWOL (absent without leave)" on two days, *id.* at 1280–81, 1283; and (3) constructive discharge, *id.* at 1283.

The district court found that the first two acts about which the plaintiff com-

plained "simply d[id] not meet the 'threshold level of substantiality' required by the Eleventh Circuit in *Wideman.*" *Id.* at 1283. The district court explained that "[n]either ... constitute[d] an unwarranted negative job evaluation or disadvantageous transfer of responsibilities." *Id.* The district court noted further that the "plaintiff did not suffer any repercussions from either of these actions. In such circumstances, courts have generally found no adverse employment action." *Id.* The district court likewise found the plaintiff's constructive discharge claim "untenable," because she could not demonstrate under a reasonable person standard that her work conditions were "'intolerable.'" *Id.* at 1284 (citing *Morgan v. Ford,* 6 F.3d 750, 755 (11th Cir.1993)).

The court finds that, because the Board's vote was ultimately rescinded, the Board's single action is more analogous to the actions in *Graham* than the numerous actions found in *Wideman.* Because the Board's vote was ultimately rescinded, Plaintiff suffered no loss of pay or any benefit of employment. Accordingly, the court finds that the "threshold level of substantiality" is not met and, thus, Plaintiff has failed to show an adverse employment action. *Wideman,* 141 F.3d at 1455. Accordingly, summary judgment is due to be granted on Plaintiff's retaliation claim brought under Title VII and Title IX.

### III. 42 U.S.C. § 1983 (Count 3)

Plaintiff also brings a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Section 1983 provides that

> [e]very person who, under color of a statute ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities se-

cured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights," rather it provides "a method for vindicating federal rights elsewhere conferred." [17] *Baker v. McCollan,* 443 U.S. 137, 144, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979).

Here, Plaintiff brings her § 1983 claim against the Board as well as against Monday in his individual and official capacities. The Board asserts that there is no theory of liability under which it can be held accountable for any of Plaintiff's allegations. Monday, in turn, has raised the defense of qualified immunity. Because the rules concerning legal responsibility and immunity from liability are different for municipals and individuals, the court will separately address Defendants' Motion For Summary Judgment as it pertains to Plaintiff's § 1983 claim against the Board and Monday. Specifically, the court will first address whether Plaintiff has asserted a theory under which the Board can be held liable. Next, the court will examine Plaintiff's § 1983 claim against Monday in his official capacity and Monday's defense of qualified immunity as to the § 1983 claim asserted against him in his individual capacity. Finally, the court will address the merits of Plaintiff's § 1983 claim.

### A. Plaintiff's § 1983 Claim Against The Board

Because there is no respondeat superior liability under § 1983, liability can attach to the Board only if the alleged unconstitutional gender discrimination was caused by an "official policy" or "custom" of the Board. *Monell v. Dept. of Social Serv.,* 436 U.S. 658, 690–92, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Floyd v. Waiters,* 133 F.3d 786, 793 (11th Cir.), *judgment vacated on another ground,* 525 U.S. 802, 119 S.Ct. 33, 142 L.Ed.2d 25 (1998). Thus, the

---

**17.** The court notes that Title VII does not preempt Plaintiff's § 1983 claim based on a violation of the Equal Protection Clause of the

Fourteenth Amendment. *See Arrington v. Cobb County,* 139 F.3d 865, 872 (11th Cir. 1998).

court must determine if the Board had an official policy or custom that resulted in Plaintiff being discriminated against on the basis of her gender.

Plaintiff can demonstrate an official policy or custom under one of the following three theories: (1) "a policy statement, ordinance, regulation or decision officially adopted and promulgated by [the Board]'s officers," *Monell,* 436 U.S. at 690, 98 S.Ct. 2018; (2) a custom that, while not formally adopted by the Board, was "so permanent and well settled" as to have "the force of law," *id.* at 691, 98 S.Ct. 2018; or (3) a decision by an official who possesses "final authority to establish municipal policy with respect to the action ordered." *Brown v. City of Ft. Lauderdale,* 923 F.2d 1474, 1480 (11th Cir.1991) (quoting *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)).

In her Amended Complaint, Plaintiff has not asserted a theory of recovery against the Board. She merely alleges that the "conduct of [ ] Defendants was willful and deliberate and under color of state law." (Am.Compl.¶ 20.) However, in opposing summary judgment, Plaintiff asserts that she has presented evidence that the alleged "sex discrimination ... she suffered is a custom of the [Board]" and that Monday was a final decisionmaker. (Resp. at 26–27.) Thus, the court addresses these two theories and construes Plaintiff's Amended Complaint to allege the same. *See* Fed.R.Civ.P. 8(f) (stating that "[a]ll pleadings shall be so construed as to do substantial justice").

### 1. Well–Settled Custom

The Board asserts that Plaintiff has failed to show an official policy or custom of gender discrimination. (Br. at 36; Reply at 16.) However, the court finds that Plaintiff has raised disputed issues of fact as to whether the Board had an unofficial, but well-settled, custom that caused gender discrimination. The evidence, when viewed in the light most favorable to Plaintiff, demonstrates that at least some of the acts about which Plaintiff complains stem directly from decisions either emanating from the Board or acquiesced in by the Board. For example, the court finds that a reasonable jury could find that Plaintiff's complaints about disparities in her job assignments (i.e., washing the uniforms, mandatory attendance at athletic club meetings, driving the bus, etc...), not having an assistant coach, and differential treatment in benefits (i.e., coaches' uniforms and out-of-town hotel accommodations) were matters either controlled or known by the Board. That is, the evidence shows that the Board governed the hiring of assistant coaches and denied Plaintiff's request for an assistant coach while allowing some of the male teams to have one. (William Dep. at 33; Pl.'s Dep. I at 45, 64–65; Pl.'s Dep. II at 37–42.) The court finds that a reasonable jury could determine that the Board's denial of Plaintiff's request is a decision that ultimately led to, or at least contributed to, Plaintiff having more duties as a coach than her male counterparts. The evidence further demonstrates that the Board was responsible for the assignment of coaches' job duties. (Williams Dep. at 114.)

The court emphasizes that its duty at this juncture is not to weigh the evidence or question its veracity, *see Anderson,* 477 U.S. at 249, 106 S.Ct. 2505; rather, the court must only eliminate claims upon which no rational jury could find for Plaintiff. *See Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348. In finding summary judgment inappropriate, the court notes that the Parties have made the court's task extremely difficult. Plaintiff's claim is poorly pleaded, making it difficult to ascertain the theories of the Board's alleged liability. Additionally, while the court recognizes that Plaintiff's pleadings complicated the Board's ability to know the precise issue(s) upon which to base a motion for summary judgment, the Board's arguments were cursory and general. For example, in moving for summary judgment, the Board notes the general principle of law and asserts a single conclusory statement that Plaintiff "cannot show" a " 'pervasive custom' " or "policy." (Br. at 36.) Plaintiff

then argues in an equally perfunctory manner that it has shown an established custom. The record at this stage is simply too sparse for the court to say with certainty that a rational jury could not find for Plaintiff.

### 2. *Monday As A Final Decisionmaker*

The court finds that summary judgment is due to be granted on Plaintiff's theory of liability that, while not a Board member, Monday was an official whose decision's constituted policies or customs of the Board. In *Floyd*, the Eleventh Circuit explained this theory of liability as follows:

> In *Brown*, we wrote that "a municipal official who has 'final policymaking authority' in a certain area of the city's business may by his or her action subject the government to § 1983 liability when the challenged action falls within that authority." 923 F.2d at 1480; *see also Scala v. City of Winter Park*, 116 F.3d 1396, 1399 (11th Cir.1997). But, as the Supreme Court wrote in *Pembaur*, "not every decision by municipal officers automatically subjects the municipality to § 1983 liability.... The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." 475 U.S. at 480–81, 106 S.Ct. 1292.... Thus, liability results when the "municipal official possesses the authority and responsibility for establishing final policy with respect to the issue in question." *Mandel*, 888 F.2d at 793 (emphasis in original). Further the determination of whether an official has final policy making authority is a question of state law to be decided by the court. *See Brown*, 923 F.2d at 1480 (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 734, 109 S.Ct. 2702, 105 L.Ed.2d 598 ... [1989]); *Mandel*, 888 F.2d at 793.

113 F.3d at 793. Thus, if one has final policymaking authority that person's decisions are essentially the municipality's policy. *See Brown*, 923 F.2d at 1481.

The Board argues that Monday did not have such authority because he "could not recommend [Plaintiff's] proposed transfer, had no authority over her salary or benefits as a tenured employee, and had no authority over creating or not creating a position of Women's Athletic Director." (Br. at 36, citing Monday's Affidavit.) Plaintiff, however, asserts "that Monday had the power to recommend her transfer, that he had the authority to evaluate her job performance, assign her job duties, and determine her athletic budgets." (Resp. at 26–27.)

Even assuming, without deciding, that Monday's actions or recommendations constitute unconstitutional gender discrimination, the court disagrees with Plaintiff. Monday must have more than the ability to make a recommendation, no matter how persuasive that recommendation may be. He must be the final decisionmaker. *See Floyd*, 133 F.3d at 794 (stating that the plaintiffs "—at most—demonstrated only that these Defendants had some 'discretion' in the performance of their jobs.")

Plaintiff has pointed to no evidence that Monday had final policymaking authority. On that point the Superintendent states that Monday, as athletic director, had "no authority over hiring, firing, transferring, or other terms and conditions of coaches' employment." (Def.s' Evid. Sub., Ex. F.) Monday's affidavit states the same. (*Id.*, Ex. D.) The evidence thus shows that Monday could only make recommendations to the Board. (William Dep. at 114; Jackson Dep. at 7, 82–84.) In fact, Plaintiff herself states that Monday recommended to the Board that Plaintiff be transferred to another school. This recommendation, however, had to be reviewed and ultimately voted on by the Board. (Jackson Dep. at 82–84.) There is no evidence that Monday had the final "say so" regarding any of the alleged discriminatory acts affecting Plaintiff's terms and conditions of employment. Based on the foregoing, the court finds as a matter of law that Monday did not have final policymaking authority. Ac-

cordingly, summary judgment is due to be granted in favor of the Board on Plaintiff's § 1983 theory that Monday was a final policymaker whose decisions constituted policies of the Board.

### B. Plaintiff's § 1983 Claim Against Monday

Plaintiff has sued Monday in his both his official and individual capacities. For the reasons that follow, the court finds that summary judgment is due to be granted on Plaintiff's § 1983 claim against Monday in his official capacity, but that summary judgment is due to be denied against Monday in his individual capacity.

#### 1. Official Capacity

Although the Parties have failed to address whether Plaintiff's § 1983 claim against Monday in his official capacity is appropriate, the court addresses the issue *sua sponte.* *See Blalock v. Dale County Bd. of Educ.,* 33 F.Supp.2d 995, 998 (M.D.Ala.1998) (DeMent, J.) (*sua sponte* dismissing Plaintiff's Title VII claim against Monday in his official capacity as redundant of Plaintiff's Title VII claim against the Board). Plaintiff's § 1983 claim against both the Board and Monday in his official capacity is redundant and unnecessary. When an officer is sued under § 1983 in his or her official capacity, the suit is simply "another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). "Such suits against municipal officers are therefore, in actuality, suits directly against the [entity] that the officer represents." *Busby v. City of Orlando,* 931 F.2d 764, 776 (11th Cir.1991). Based on the foregoing, the court finds that summary judgment is due to be granted on Plaintiff's § 1983 claim against Monday in his official capacity, as Plaintiff has effectively brought a claim against the Board. *See id.* at 776 (affirming the district court's dismissal of a plaintiff's claims against the defendants in their official capacities because to keep both the City and the officers would have been redundant and possibly confusing to the jury).

#### 2. Individual Capacity

Under § 1983, Plaintiff also seeks to hold Monday liable for monetary damages in his individual capacity. Monday contends that, in his individual capacity, he is immune from damages under the well-established doctrine of qualified immunity. The Supreme Court of the United States has held "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *see also Rich v. Dollar,* 841 F.2d 1558, 1563 (11th Cir.1988). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

The test for whether a governmental defendant is entitled to qualified immunity from liability in his or her individual capacity involves a two-step analysis. A government official first must demonstrate that " 'he [or she] was acting within the scope of his [or her] discretionary authority when the allegedly wrongful acts occurred.' " *Rich,* 841 F.2d at 1563–64 (quoting *Zeigler v. Jackson,* 716 F.2d 847, 849 (11th Cir.1983)). If a defendant satisfies this burden, the plaintiff must show either that the official's actions " 'violated clearly established constitutional law' " or a federal statute. *Id.*

In addressing the first prong of the *Zeigler* inquiry, the court finds that any decision or recommendation by Monday concerning Plaintiff's job or performance as a coach occurred while Monday was acting within his discretionary authority. Hence, the court finds that Monday's actions were undertaken pursuant to the performance of his duties and were within the scope of his discretionary authority. *See Hutton v. Strickland,* 919 F.2d 1531, 1536 (11th Cir.1990).

Under the second prong, the court must determine whether the applicable law was clearly established at the time of the challenged action. This is determined by reference to decisions of the Supreme Court of the United States, the Court of Appeals for the Eleventh Circuit and, in this case, the Supreme Court of Alabama. *D'Aguanno v. Gallagher,* 50 F.3d 877, 881 n. 6 (11th Cir.1995); *Courson v. McMillian,* 939 F.2d 1479, 1498 n. 32 (11th Cir. 1991). A plaintiff must point to a controlling case, decided before the events at issue, that establishes a constitutional violation on "materially similar" facts. *Lassiter v. Alabama A & M Univ., Bd. of Trustees,* 28 F.3d 1146, 1150 (11th Cir. 1994). As emphasized in *Lassiter,* "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violated federal law in the circumstances." *Id.; see also Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (holding that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right").

The Supreme Court of the United States has stated that "[a] necessary concomitant to the determination of whether the constitutional right or federal statutory right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all." *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). Thus, in following the instructions in *Siegert,* the court will first determine whether Plaintiff has asserted a constitutional violation. *See Tinney v. Shores,* 77 F.3d 378, 381 (11th Cir.1996) (citing *Wooten v. Campbell,* 49 F.3d 696, 699 (11th Cir.1995)); *Jordan v. Doe,* 38 F.3d 1559, 1564 (11th Cir.1994).

Plaintiff contends that Monday violated her rights under the Equal Protection Clause of the Fourteenth Amendment, as enforced by 42 U.S.C. § 1983. (Am.

Compl.¶ 19.) The Equal Protection Clause guarantees to each individual the right to equal treatment in the exercise of his or her fundamental rights and the right to be free from classifications based on impermissible criteria. *See Johnson v. City of Tarpon Springs,* 758 F.Supp. 1473, 1480–81 (M.D.Fla.1991); *see also Bass v. City of Albany,* 968 F.2d 1067, 1070 (11th Cir. 1992). More specifically, the Equal Protection Clause of the Fourteenth Amendment "prohibits intentional discrimination based on membership in a particular class, including acts of employment discrimination." *Trigg v. Fort Wayne Community Schools,* 766 F.2d 299, 300 (7th Cir.1985) (internal citation omitted) (citing *Davis v. Passman,* 442 U.S. 228, 234–235, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979)); *see also Elston v. Talladega County Bd. of Educ.,* 997 F.2d 1394, 1406 n. 11 (11th Cir.1993). Plaintiff asserts that, on the basis of her gender, she has been treated differently than male coaches and, thus, has been discriminated against in the terms and conditions of her employment. The court finds that these allegations, if proven, establish a violation of rights protected by the Equal Protection Clause of the Fourteenth Amendment.

Now, the court must analyze Plaintiff's equal protection claim, as enforced by § 1983, in the context of qualified immunity. As previously stated, to attach individual liability to Monday, Plaintiff must prove that Monday "violated not only a constitutional right, but a 'clearly established' constitutional right." *Hamilton v. Cannon,* 80 F.3d 1525, 1528 (11th Cir. 1996).

It is clear that during the timeframe of the alleged sex discrimination—approximately 1993–1995—the Eleventh Circuit had determined that the equal protection right to be free from sex discrimination was "clearly established." As explained in *Saville, supra,* the right has been clearly established at least since 1991:

Under Supreme Court and Eleventh Circuit precedent, intentional discrimi-

nation against an employee in the workplace because of the employee's sex is plainly a violation of that employee's right to equal protection. The equal protection clause contains a clearly established federal constitutional right to be free from intentional sex discrimination, *Davis v. Passman*, 442 U.S. 228, 234–35, 99 S.Ct. 2264, 60 L.Ed.2d 846 … (1979), unless the discrimination serves important governmental objectives and is substantially related to those objectives. *Id.See also Nicholson v. Georgia Dept. of Human Resources*, 918 F.2d 145, 148 (11th Cir.1990) (right to be free from intentional sex discrimination in the workplace is clearly established); *Goodwin v. Circuit Court of St. Louis County, Mo.*, 729 F.2d 541, 546 (8th Cir.1984) (right to be free of invidious sex discrimination "certainly is clearly established, and no one who does not know about it can be called 'reasonable' in contemplation of law").

852 F.Supp. at 1533.

■ Thus, if Plaintiff proves at trial that the discriminatory acts allegedly taken by Monday were intentional, then Monday would not be immune from civil liability in his individual capacities. Therefore, no reasonable person in Monday's position could have concluded in 1993 that the discriminatory acts Monday allegedly engaged in, to the extent it was intentionally directed to Plaintiff because of her sex, was constitutionally permissible under the Equal Protection Clause. The contours of Plaintiff's right to be free from intentional discrimination in the workplace on the basis of her sex were "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640, 107 S.Ct. 3034. Monday is, therefore, not entitled to qualified immunity to the extent Plaintiff charges him with intentionally discriminating against her because of her sex.

## C. The Merits

The court must now determine whether Plaintiff has raised a genuine issue of fact on the merits of her § 1983 claim against the Board and Monday in his individual capacity. Where a plaintiff brings an action under both Title VII and § 1983, "the substantive elements of proof are the same under both statutes" for determining whether a genuine issue of material fact exists on the issue of discrimination. *Pearson v. Macon–Bibb County Hospital*, 952 F.2d 1274, 1281 (11th Cir.1992). Under Title VII and § 1983, a plaintiff's ultimate burden of proof requires a showing by a preponderance of the evidence that the defendants "acted with discriminatory intent." *Richardson v. Leeds Police Dept.*, 71 F.3d 801, 805 (11th Cir.1995). Both citing *Pearson*, the Parties agree that the allocation of burdens and proof is the same for Plaintiff's claim asserted under Title VII and § 1983. (Resp. at 26; Def.s' Br. at 35.)

■ Accordingly, the court need not address Plaintiff's § 1983 claim separately from her Title VII claim. *Richardson*, 71 F.3d at 805. Again, Plaintiff has asserted the same four theories of liability under § 1983 as she did under Title VII:(1) disparate pay; (2) hostile work environment; (3) disparate treatment; and (4) retaliation. The court has addressed these four theories in Subsection II. above. Thus, for the same reasons discussed therein, the court finds that Plaintiff cannot prevail on her theories alleging disparate pay, hostile work environment and retaliation. Plaintiff's disparate treatment theory, however, survives summary judgment.[18] Accordingly, summary judgment is due to be granted on Plaintiff's § 1983 claim premised upon the theories of disparate pay, hostile work environment and retaliation against the Board and against Monday in his indi-

18. The court notes that there is no requirement that a plaintiff exhaust his or administrative remedies before filing suit under § 1983. *Smith v. McClammy*, 740 F.2d 925, 927 (11th Cir.1984). Thus, the court's finding in Section II.C. that some of Plaintiff's Title VII disparate treatment allegations were barred based on her failure to exhaust administrative remedies does not apply to Plaintiff's § 1983 claim.

vidual capacity. However, summary judgment is due to be denied on Plaintiff's § 1983 claim premised upon a disparate treatment theory against the Board and Monday in his individual capacity.

### IV. Equal Pay Act (Count 4)

Defendants argue that they are entitled to summary judgment on Plaintiff's Equal Pay Act claim. The court need not address the merits of Defendants' argument because the Plaintiff concedes that summary judgment in favor of Defendants should be entered on the Equal Pay Act claim. (Resp. at 27.) Accordingly, the court concludes that summary judgment is due to be granted on Plaintiff's Equal Pay Act claim (Count 4).

### ORDER

Accordingly, it is CONSIDERED and ORDERED as follows:

(1) The Board's Motion For Summary Judgment on Plaintiff's Title IX claim (Count 1) be and the same is hereby GRANTED;

(2) The Board's Motion For Summary Judgment on Plaintiff's Title VII claim (Count 2) be and the same is hereby GRANTED in part and DENIED in part and Plaintiff may proceed to trial on her Title VII claim alleging disparate treatment as detailed herein;

(3) Defendants' Motion For Summary Judgment on Plaintiff's Equal Protection claim brought under 42 U.S.C. § 1983 (Count 3) be and the same is hereby GRANTED in part and DENIED in part and, as detailed herein, Plaintiff may proceed to trial on her § 1983 equal protection claim alleging disparate treatment against the Board on the theory that the Board had an unofficial, but well-settled, custom that caused gender discrimination, and against Monday in his individual capacity; and

(4) Defendants' Motion For Summary Judgment on Plaintiff's Equal Pay Act claim (Count 4) be and the same is hereby GRANTED.